**3. Animals ⊂⊃36—Evidence held not to warrant conviction of violating Tick Law.**

In prosecution for violation of Tick Law, where uncontradicted evidence showed cattle in question had no fever carrying tick on them, conviction was not warranted.

Appeal from Cherokee County Court; J. J. Bolton, Judge.

G. M. Rains was convicted of violating the Tick Law, and he appeals. Reversed and remanded.

M. L. Lefler, of Beaumont, for appellant.

Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

LATTIMORE, J. Appellant was convicted in the county court of Cherokee county of violation of the Tick Law, and his punishment fixed at a fine of $50.

Appellant owned some cattle. In October, 1922, he sold eight head. They were inspected before he sold them and found free of ticks. In March, 1923, he was notified to dip his cattle at a certain dipping vat on April 6th following. He did not do so; hence this prosecution.

[1] The penal features of the Tick Law are aimed at the owner, person in control, or caretaker of live stock who violates its provisions, and in the complaint in this case it is alleged that appellant was such owner and caretaker and after due notice had failed and refused to dip his cattle. An inspection of the statement of facts shows that the state did not prove that in April, 1923, appellant owned any cattle. His wife took the stand and testified that in fact he had none at that time. She said that she had a cow and calf which had been given her by her father; that appellant owned no interest in either of them; that she attended to and cared for both of said cattle; that they ran in a small pasture and were free from ticks.

[2] Article 4621, Vernon's Complete Texas Statutes 1920 (Vernon's Ann. Civ. St. Supp. 1922, art. 4621), specifically states that during marriage the wife shall have the sole management, control, and disposition of her separate real and personal property, and when to this statement of the law is added the proof appearing in this case that the wife in fact took care of the cow and calf which were her separate property, and when it further appears that the state has offered no testimony to combat the truth of this defensive matter, this court sees no alternative save to hold the state has failed to make out its case against appellant.

[3] We might further add that in a special charge given, the jury were told that if they found appellant was the owner, controller, or caretaker of milk or dairy cattle, and that said cattle did not have the fever carrying tick on them, they should acquit. Two witnesses for the defense swore that they examined the cow and calf mentioned and found them free of ticks. No witness for the state testified to having made an examination and found ticks on said cattle. A verdict of guilty under these facts and this special charge seems contrary to both the law and the evidence.

The judgment is reversed, and the cause remanded.

---

**Ex parte McNEELY. (No. 9114.)**

(Court of Criminal Appeals of Texas. Jan. 7, 1925.)

**1. Bail ⊂⊃43 — To warrant denial of bail, court must believe that death penalty would be inflicted.**

To warrant denial of bail to one accused of murder, court must believe that upon a trial before a fair jury death sentence would be inflicted.

**2. Bail ⊂⊃49—Evidence held not to show that death penalty would be inflicted warranting denial of bail.**

Evidence *held* not to conclusively show that circumstances of killing were such that one charged with murder would have death penalty inflicted, and hence denial of bail was error.

Appeal from District Court, Bell County; Lewis H. Jones, Judge.

Application by C. S. McNeely for bail. From order denying it, he appeals. Reversed and bail granted.

White & Culp and Dewitt Bowmer, all of Temple, for appellant.

Few Brewster, Dist. Atty., and A. L. Curtis, both of Belton, W. W. Hair, of Temple, and Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

LATTIMORE, J. [1, 2] This is an appeal from an order of the district court of Bell county denying bail. Appellant was charged with murder. We are asked to affirm the judgment. In order to do so we must be led to believe that upon a trial before a fair jury a death sentence would be inflicted. The men were brothers-in-law, and appellant is shown to have been dissatisfied with a division of land, and to have had a grudge against deceased. They were seen talking in front of a store. Appellant was angry. In a short time the homicide occurred. One witness said he saw deceased ward off a blow and strike appellant, staggering him back. Blood began to flow down the face of appellant, and he came back preparing to shoot, and did shoot four times. What was said or done precipitating the first blow is not shown

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in the record. Several witnesses speak of seeing the parties "scuffling" before the shooting began. What brought about the scuffle is not shown in the record. The blow inflicted upon appellant by deceased which preceded the shooting cut through a heavy hat and to the bone above appellant's eye. A piece of iron was found on the person of deceased, and a physician testified that this instrument apparently could have caused the injury inflicted upon appellant. We are left in the dark as to what passed between the two men before they began scuffling, or what immediately caused or led up to the first blow which was apparently struck by appellant. He may have intended merely a fist fight. He may not have had his pistol out when he struck at deceased. He may have intended by an assault with his fist to provoke an attack on the part of deceased which could be used as a pretext for wreaking his malice upon the latter. Appellant may only have intended a fist fight, and may have been struck by deceased with a piece of iron which the jury might deem to be more force than was reasonably necessary to repel an attack with the fist, and that the blow and the injury inflicted by it produced in appellant's mind such mental condition as would make the homicide no more than manslaughter. Most of these are fact questions upon which we are given little light and which would have to be solved by the jury.

We regret to differ with the conclusions of the trial judge in a matter of this kind, but find ourselves unable to conclude from the unsatisfactory state of the record as showing the immediate antecedents of the homicide that upon a trial the death penalty would be inflicted.

The judgment will be reversed and bail granted in the sum of $10,000.